UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GUADALUPE CAMPOS,                    )   Case No. EDCV 08-440 JC
                                     )
                 Plaintiff,          )
                                     )   MEMORANDUM OPINION AND
          v.                         )   ORDER OF REMAND
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social               )
Security,                            )
                                     )
                 Defendant.          )
_____    )

## I.    SUMMARY

On April 2, 2008,  plaintiff Guadalupe Campos ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; April 7, 2008 Case Management Order, ¶ 5.

///

1

1   Based on the record as a whole and the applicable law, the decision of the

2   Commissioner is REVERSED AND REMANDED for further proceedings

3   consistent with this Memorandum and Opinion and Order of Remand.

4   **II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5   **DECISION**

6   In January 2004, plaintiff filed applications for Supplemental Security

7   Income and Disability Insurance Benefits.  (Administrative Record ("AR") 16,

8   103-105).  Plaintiff asserted that she became disabled in April 2002, due to two

9   back surgeries with metal rods in her spine, shoulder surgery, dislocated cervical

10  neck vertebra disc, anticipated elbow surgery, high blood pressure with angina,

11  arthritis and high cholesterol.  (AR 103, 119).  The Administrative Law Judge

12  ("ALJ") examined the medical record and heard testimony from plaintiff (who was

13  represented by counsel) on March 24, 2005.  (AR 804-826).

14  On April 18, 2005, the ALJ determined that plaintiff was not disabled

15  through the date of the decision.  (AR 45-51).  On February 23, 2006, the Appeals

16  Council granted plaintiff's application for review and remanded the matter.  (AR

17  92-95).

18  The ALJ again examined the medical record and heard testimony from

19  plaintiff (who was represented by counsel) and a vocational expert on September

20  13, 2006.  (AR 826-43).  On December 8, 2006, the ALJ, who incorporated by

21  reference his prior April 18, 2005 decision, again determined that plaintiff was not

22  disabled through the date of the decision.  (AR 16-22).  Specifically, the ALJ

23  found:  (1) plaintiff suffered from the following combination of severe

24  impairments: residuals of bilateral shoulder and left elbow injuries; residuals of

25  lumbar spine surgery; history of coronary artery disease with atypical chest pain

26  and well preserved cardiac function; chronic cervicothoracic sprain-strain

27  syndrome with moderate degenerative changes in the cervical spine; and mood

28  disorder, not otherwise specified (AR 18); (2) plaintiff's impairment or

2

1  combination of impairments did not meet or medically equal a listed impairment
2  (AR 19); (3) plaintiff retained, and never lost for any significant period of time,
3  the residual functional capacity to perform a "significant range of light work" and
4  more specifically, to:  (a) lift, carry, push, or pull twenty pounds occasionally, and
5  ten pounds frequently; (ii) stand or walk frequently with customary breaks; and
6  (iii) sit at least frequently with customary breaks. perform light work (AR 19, 20);
7  (4) plaintiff could perform her past relevant work as an assistant manager/
8  supervisor housekeeper; and bus driver (AR 21);[1] (5) if, in addition to the
9  foregoing residual functional capacity, plaintiff was mentally limited to simple,
10  routine, repetitive, nonpublic tasks, she could perform jobs that exist in significant
11  numbers in the national economy (AR 21-22); and (6) plaintiff's statements
12  concerning the intensity, persistence and limiting effects of her symptoms were
13  not entirely credible (AR 20).
14       On February 15, 2008, the Appeals Council denied plaintiff's application
15  for review.  (AR 7-9).
16  **III.   APPLICABLE LEGAL STANDARDS**
17       **A.     Sequential Evaluation Process**
18       To qualify for disability benefits, a claimant must show that she is unable to
19  engage in any substantial gainful activity by reason of a medically determinable
20  physical or mental impairment which can be expected to result in death or which
21  has lasted or can be expected to last for a continuous period of at least twelve
22  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
23  § 423(d)(1)(A)).  The impairment must render the claimant incapable of
24  performing the work she previously performed and incapable of performing any
25  ///
26
27       [1]The ALJ appears to have inadvertently (i) left out the word "housekeeper" in his decision
    and (ii) stated in a concluding sentence that plaintiff was "unable" rather than "able" to perform
28  past relevant work.  (AR 21, 839).

3

1  other substantial gainful employment that exists in the national economy.  Tackett
2  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

3      In assessing whether a claimant is disabled, an ALJ is to follow a five-step
4  sequential evaluation process:

5      (1)   Is the claimant presently engaged in substantial gainful activity?  If
6           so, the claimant is not disabled.  If not, proceed to step two.

7      (2)   Is the claimant's alleged impairment sufficiently severe to limit
8           her ability to work?  If not, the claimant is not disabled.  If so,
9           proceed to step three.

10     (3)   Does the claimant's impairment, or combination of
11          impairments, meet or equal an impairment listed in 20 C.F.R.
12          Part 404, Subpart P, Appendix 1?  If so, the claimant is
13          disabled.  If not, proceed to step four.

14     (4)   Does the claimant possess the residual functional capacity to
15          perform her past relevant work?[2]  If so, the claimant is not
16          disabled.  If not, proceed to step five.

17     (5)   Does the claimant's residual functional capacity, when
18          considered with the claimant's age, education, and work
19          experience, allow her to adjust to other work that exists in
20          significant numbers in the national economy?  If so, the
21          claimant is not disabled.  If not, the claimant is disabled.

22  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
23  Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

24     The claimant has the burden of proof at steps one through four, and the
25  Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262

26  _____

27      [2]Residual functional capacity is "what [one] can still do despite [ones] limitations" and
    represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a),
28  416.945(a).

4

1  F.3d 949, 953-54 (9th Cir. 2001) (citing <u>Tackett</u>); <u>see also</u> <u>Burch</u>, 400 F.3d at 679

2  (claimant carries initial burden of proving disability).

3       **B.    Standard of Review**

4       Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

5  benefits only if it is not supported by substantial evidence or if it is based on legal

6  error.  <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 882 (9th Cir.

7  2006) (citing <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1457

8  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>,

10  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

11  mere scintilla but less than a preponderance.  <u>Robbins</u>, 466 F.3d at 882 (citing

12  <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

13       To determine whether substantial evidence supports a finding, a court must

14  "'consider the record as a whole, weighing both evidence that supports and

15  evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>

16  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d

17  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

18  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

19  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

20  **IV.   DISCUSSION**

21       **A.    Consultative Examining Physicians' Opinions**

22       Plaintiff contends that the ALJ erroneously considered the opinions of

23  consulting examiners, Drs. Nicholas N. Lin and Linda M. Smith.  (Plaintiff's

24  Motion at 2-4, 8-9).  As discussed below, this Court agrees that a remand is

25  appropriate based on the ALJ's errors relative to his assessment of the opinions of

26  the consulting examiners – errors which this Court cannot deem to be harmless.

27  ///

28  ///

1                            **1.     Applicable Law**

2          In Social Security cases, courts employ a hierarchy of deference to medical

3    opinions depending on the nature of the services provided.  Courts distinguish

4    among the opinions of three types of physicians: those who treat the claimant

5    ("treating physicians") and two categories of "nontreating physicians," namely

6    those who examine but do not treat the claimant ("examining physicians") and

7    those who neither examine nor treat the claimant ("nonexamining physicians").

8    Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A

9    treating physician's opinion is entitled to more weight than an examining

10   physician's opinion, and an examining physician's opinion is entitled to more

11   weight than a nonexamining physician's opinion.[3]  See id.

12         As with a treating physician, the Commissioner must present "clear and

13   convincing" reasons for rejecting the uncontroverted opinion of an examining

14   physician and may reject the controverted opinion of an examining physician only

15   for "specific and legitimate reasons that are supported by substantial evidence."

16   Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1164

17   (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31).

18                      **2.     Analysis – Dr. Lin's Opinion**

19         Plaintiff contends that the ALJ failed properly to consider  Dr. Lin's opinion

20   that plaintiff could "reach[] in all directions except overhead actions."  (Plaintiff's

21   Motion at 3).  This Court finds that the ALJ did err in silently rejecting Dr. Lin's

22   opinion in this regard and that such error cannot be deemed harmless.

23   ///

24

25

26         [3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 ( 4 9th Cir. 2008) (not necessary or practical to
     draw bright line distinguishing treating physicians from non-treating physicians; relationship is
27   better viewed as series of points on a continuum reflecting the duration of the treatment
     relationship and frequency and nature of the contact) (citation omitted).
28

On July 24, 2006, Dr. Lin performed a complete internal medicine evaluation on plaintiff.  (AR 685-91).  In the functional assessment portion of his evaluation report, Dr Lin opined:

> [T]he claimant can life or carry 20 pounds occasionally and 10 pounds frequently.  She can stand or walk for 6 hours in an 8-hour workday.  She can sit for 6 hours in an 8-hour workday.  [¶] Bending, stooping, kneeling, crouching and climbing stairs can be done occasionally.  The claimant can do fine and gross manipulation as well as *reaching in all directions except overhead actions*. . . .

(AR 690) (emphasis added).

The ALJ stated the following with respect to Dr. Lin's opinion:
> The thorough and detailed physical examination was within normal limits except for minimal to mild limitation of lumbar spine motion without spinal or paraspinal tenderness, and minimal to mild limitation of shoulder motions bilaterally.  The examiner indicated the claimant could perform light work with occasional postural changes and no manipulative limitations *other than an unspecified limitation on reaching overhead*.

(AR 19) (citations omitted and emphasis added).

Although the ALJ adopted the majority of Dr. Lin's opinion, he did not incorporate into the residual functional capacity assessment, any limitation on plaintiff's reaching ability.  The ALJ instead appears to have silently rejected Dr. Lin's opinion in this regard.[4]  Defendant contends that it can be reasonably inferred from the ALJ's decision that he rejected Dr. Lin's opinion regarding the reaching limitation in favor of the treating physicians' opinion that plaintiff was

---

[4]As the ALJ otherwise adopted Dr. Lin's opinion, his failure to incorporate a reaching limitation may have been inadvertent.  (AR 20).

7

capable of returning to her past job in December 2005, despite the fact that the treating physician acceded to plaintiff's request for a three month off work order. (Defendant's Motion at 2-3 ) (citing AR 20, 619).  However, as plaintiff's job, as actually performed, did not require reaching (AR 129-35), this Court does not believe it is reasonable to infer that the ALJ rejected Dr. Lin's reaching limitation on the foregoing basis.  The Court thus concludes that the ALJ erred in rejecting Dr. Lin's opinion regarding a reaching limitation without stating any reason therefor (or in failing inadvertently to include it in the residual functional capacity assessment).

The Court next considers whether the ALJ's error was harmless.  Here, as indicated above, plaintiff did not indicate in her disability reports that her past relevant jobs (assistant manager/supervisor housekeeper; bus driver) as she performed them, required *any* reaching.  (AR 129-35).  At step four of the sequential evaluation process, the Administration may deny benefits when the claimant can perform the claimant's past relevant work as "actually performed," or as "generally" performed.[5]  Pinto v. Massanari, 249 F.3d 840, 845 (2001). Accordingly, if the ALJ's residual functional capacity assessment is otherwise supported and consistent with plaintiff's past work as *actually* performed, the analysis would end at step four, and the ALJ's error in failing to give reasons to

---

[5]However, according to the Dictionary of Occupational Titles ("DOT"), plaintiff's past relevant jobs, as *generally* performed, did require frequent or constant reaching.  DOT §§ 187.167-046 (executive housekeeper), 913.463-010 (busdriver).  Likewise, the jobs identified in the ALJ's alternative step five finding – cleaner, housekeeper, packager and assembler, all require frequent or constant reaching.  DOT §§ 323.687-014 (cleaner, housekeeping), 920.587-018 (hand packager), 920.687-130 (packer), 369.687-010 (assember).  The DOT does not specify whether *overhead* reaching is required in any of these positions.  The testimony of a vocational expert may be needed to determine the impact varying degrees of reaching limitations would have on the number of jobs a person could do.  See Social Security Ruling 85-15.  Here, the ALJ did not ask the vocational expert any hypothetical questions which incorporated a reaching limitation.

1   reject Dr. Lin's reaching limitations would be harmless.  However, as reflected in

2   the discussion regarding Dr. Smith below, the Court cannot so find in this case.

3                    **3.    Analysis – Dr. Smith's Opinion**

4           Plaintiff contends that the ALJ failed properly to assess the opinions of Dr.

5   Smith and implicitly rejected such opinions without stating the reasons therefor.

6   While the ALJ properly considered Dr. Smith's opinions in making the step two

7   determination that plaintiff's mental impairments, by themselves, were not severe,

8   this Court concludes that the ALJ did not properly consider such opinions in the

9   remaining steps of the analysis.  Such error, in light of the ALJ's other error in

10  failing properly to consider Dr. Lin's opinion regarding plaintiff's reaching

11  limitation, cannot be deemed harmless.

12          In determining the severity of a plaintiff's mental impairment, ALJs are to

13  determine the degree of limitation in the following four areas:  (1) activities of

14  daily living; (2) social functioning; (3) concentration, persistence, or pace; and

15  (4) episodes of decompensation.  If the degree of limitation in these four areas is

16  determined to be "mild," a plaintiff's mental impairment is generally not severe,

17  unless there is evidence indicating a more than minimal limitation in her ability to

18  perform basic work activities.[6]  See 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-

19  (d);(AR 19, 698-704).

20          Here, Dr. Smith assessed plaintiff to have no more than mild limitations in

21  her basic work abilities which is consistent with a finding at step two of the

22  sequential evaluation process, that plaintiff's mental impairments were not severe.

23  (AR 704).  Specifically, on July 28, 2006, Dr. Smith performed a complete

24  psychiatric evaluation on plaintiff.  (AR 698-704).  Dr Smith opined that plaintiff

25  (1) was not impaired in her ability to understand, remember or complete simple

26  _____

27          [6]Basic work activities include:  (1) understanding, carrying out, and remembering simple
    instructions; (2) responding appropriately to supervision, co-workers and usual work situations;
28  and (3) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

                                          9

commands; and (2) was mildly impaired in her ability to (a) understand, remember or complete complex commands due to some possible problems with concentration and memory and some problems with unstable mood; (b) interact appropriately with supervisors, co-workers, or the public due to interference from unstable mood; (c) comply with job rules such as safety and attendance due to some possible problems with concentration and memory and some problems with unstable mood; (d) respond to change in the normal workplace setting due to some possible problems with concentration and memory and some problems with unstable mood; and (e) maintain persistence and pace in a normal workplace setting due to some possible problems with concentration and memory and some problems with unstable mood.  (AR 704).

The ALJ expressly addressed Dr. Smith's opinions in his decision, stating:

[Dr. Smith] diagnosed mood disorder, not otherwise specified, and assessed a global assessment of functioning (GAF)[7] score of 61, indicating mild symptoms and limitations . . . . [¶]  I find that claimant has not established a severe mental impairment . . . .  While the consultative psychiatric examiner may have expressed some doubts about the severity of the claimant's impairment, saying it might be mild to moderate, the examiner came down on the side of mild which is consistent with the treating source records indicating moderate severity initially followed by improvement with treatment, especially since there is no documentation of ongoing mental health treatment.  I

---

[7]A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score from 61-70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning. . . . , but generally functioning pretty well, has some meaningful interpersonal relationships." See DSM-IV, at 34.

find then there are no more than slight mental limits and that credible
evidence does not support the existence of a chronic severe mental
impairment or *the imposition of any mental limits on the claimant's*
*ability to work.*  There are no restrictions on activities of daily life.
There is at most mild restriction on socialization, with *no limitation of*
*concentration, pace, or persistence* and no withdrawal behavior.

(AR 19) (citations omitted) (emphasis added).

As the foregoing reflects, the ALJ largely adopted Dr. Smith's opinion, but,
in the italicized portions, effectively discounted Dr. Smith's opinions that plaintiff
had some mental limitations, even though mild, in her ability to work, and
specifically, in her ability to concentrate and maintain persistence and pace and in
her ability understand, remember or complete complex commands.  While Dr.
Smith's opinion provides substantial support for the ALJ's determination at step
two – that plaintiff did not have a severe mental impairment, that is not the end of
the inquiry.  In making a residual functional capacity assessment, an ALJ is
required to consider even medically determinable impairments that are not severe
under step two, as well as the limiting effects thereof.  See 20 C.F.R.
§§ 404.1545(a)(2), 404.1545(e), 416.945(a)(2), 416.945(e).  Here, the ALJ
disregarded, Dr. Smith's opinions regarding plaintiff's mild mental limitations
without stating the reasons therefor.  This was error.

The Court next considers whether the ALJ's error was harmless.  The Court
cannot so find in this case.  The record does not reflect, for purposes of step four
of the sequential evaluation process, that plaintiff could perform her past relevant
work as she actually performed it[8] with the limitations, even though mild, that Dr.

---

[8]This Court limits its step four analysis vis-a-vis Dr. Smith's mental limitations to
plaintiff's past jobs as *actually* performed (as opposed to as actually or generally performed)
because, as discussed above, the ALJ's error relative to Dr. Lin's reaching limitation opinion is

(continued...)

Smith opined existed.[9]  Absent such evidence, it is necessary to move to step five of the analysis.  There is evidence in the record, in the form of the vocational expert's opinion that there are a significant number of jobs in the national economy that plaintiff could perform if she had certain mental limitations and otherwise had the residual functional capacity assessed by the ALJ.  (AR 841-42). However, there is no evidence in the record that there are a significant number of jobs in the national economy that a person could do if she had (i) the mental limitations suggested by Dr. Smith; *and* (ii) the reaching limitation suggested by Dr. Lin; *and* (iii) the residual functional capacity assessed by the ALJ. Accordingly, when considered in context, this Court cannot find that the ALJ's errors in failing to offer reasons to discount the pertinent opinions of Drs. Lin and Smith were harmless.

///
///
///
///
///
///
///
///
///
///

---

[8](...continued)
harmless only if the step four non-disability determination is predicated upon plaintiff's ability to perform her past jobs as actually performed.

[9]Indeed, although not directly on point, the vocational expert opined that an individual limited to simple, routine, repetitive, non-public tasks could not perform plaintiff's past relevant work.  (AR 841).

**V.    CONCLUSION**[10]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[11]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   March 27, 2009

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[10]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[11]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).